# IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF GEORGIA SAVANNAH DIVISION

**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
*3:33 pm, Mar 29, 2023*

In re:                                                    )
                                                          )
                                                          )
                                                          )          Chapter 13
ERICA LATRELLE BRYANT,                                    )
                                                          )          Number 22-40822-EJC
        *Debtor.*                                         )
                                                          )
_____                           )

## OPINION ON MOTION TO DISMISS WITH PREJUDICE

This is the sixth Chapter 13 case filed by Debtor Erica Latrelle Bryant in this Division since 2013. Her first five cases were all dismissed, the first for failure to timely pay the filing fee and the other four for failure to make plan payments. On November 9, 2022, the Debtor filed the instant case, her sixth. (Dckt. 1). When she failed to make pre-confirmation payments as required by 11 U.S.C. § 1326(a)(1), the Chapter 13 Trustee moved to dismiss the case under §1307(c). (Dckt. 18). And, based on the Debtor's history of unsuccessful cases, the Trustee seeks dismissal with prejudice for a minimum of 180 days under § 109(g). At a hearing on January 18, 2023, the Court announced that the case would be dismissed based on the Debtor's failure to make payments but took under advisement whether such dismissal would

1

be with prejudice. For the reasons set forth below, the dismissal of this case will be without prejudice.

## I. Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A). The Court makes the following findings of fact and conclusions of law pursuant to Rules 9014(c) and 7052 of the Federal Rules of Bankruptcy Procedure, the latter of which incorporates Rule 52 of the Federal Rules of Civil Procedure.

## II. Findings of Fact

In seeking dismissal with prejudice, the Chapter 13 Trustee does not allege any wrongful conduct by the Debtor in the instant case. Rather, the Trustee argues that the Debtor has engaged in bad-faith serial filing because she has filed six unsuccessful Chapter 13 cases since 2013. To determine whether the Debtor has acted in bad faith, a brief history of those prior cases is in order.[1]

---

[1] At the January 18, 2022 hearing in the instant case, neither Debtor's counsel nor the Chapter 13 Trustee's staff attorney objected to the Court's consideration of the docket in each of the prior cases. "Federal Rule of Evidence 201 allows a federal court to take judicial notice of facts that are not subject to reasonable dispute," including "the docket entries in a case and the contents of the bankruptcy schedules to determine the timing and status of case events[.]" *Davis v. Bank of Am., N.A.) In re Davis*, 597 B.R. 770, 773 (Bankr. M.D. Pa. 2019).

A. <u>The First Case (2013)</u>

The Debtor filed her first case, No. 13-41310-EJC, on July 23, 2013. (2013 Dckt. 1).[2] In that case, attorney Jeffrey S. Hanna represented the Debtor. On the petition date, the Debtor applied to pay the $281.00 filing fee in four installments, with the final installment due by November 26, 2013. (2013 Dckt. 2). The Debtor stated in Schedule I that her combined average monthly income was $1,636.56 and that her average monthly expenses were $1,485.00, for monthly net income of $151.56.[3] (2013 Dckt. 1, pp. 19-20). In her Chapter 13 plan, the Debtor proposed to make payments of $150.00 for a minimum of 36 months, reflecting the commitment of all her disposable income as required by § 1325(b)(2). (2013 Dckt. 5, p. 1, ₱ 1).

As for the claims in her case, the Debtor listed in Schedule D a single secured claim by TitleMax of Georgia, Inc. ("TitleMax") in the amount of $1,400.00 and secured by a 2000 Ford Expedition. (2013 Dckt. 1, p. 13). TitleMax filed a proof of claim in the amount of $1,901.41 secured by the vehicle (2013 Claim No. 4-1), and no other secured claims were filed. The unsecured claims listed in the Debtor's Schedule E and Schedule F totaled $594.00 (2013 Dckt. 1, pp. 15-16), and the claims register reflects unsecured claims totaling $692.61.

---

[2] To avoid confusion, citations in this Opinion to docket entries will include the year the applicable case was filed.

[3] "In the Chapter 13 context . . . the required statement of 'monthly net income' appropriately refers to 'disposable income'" as defined in § 1325(b). Hon. W. Homer Drake, Hon. Paul W. Bonapfel, & Adam M. Goodman, *Chapter 13 Practice & Procedure* § 13:8 n. 11 (2022 ed.).

3

On September 17, 2013, the Chapter 13 Trustee moved to confirm the Debtor's plan subject to her payment of the filing fee. (2013 Dckt. 22). Under an Order on Confirmation entered on September 20, 2013, the Debtor was required to pay the filing fee in full by November 23, 2013. (2013 Dckt. 23). On December 19, 2013, the Chapter 13 Trustee filed a notice of noncompliance with the September 20, 2013 Order on Confirmation and requested dismissal of the case; an attachment to that notice reflects that the filing fee remained unpaid. (2013 Dckt. 27). The case was dismissed with prejudice on January 6, 2014, barring refiling within 180 days or until the filing fee was paid. (2013 Dckt. 29).

After dismissal, the Chapter 13 Trustee remitted funds, previously paid to the Trustee by the Debtor, toward the filing fee in separate installments of $46.00 and $230.92 on January 31, 2014. The Trustee listed these payments, totaling $276.92, in his Final Report and Account. (2013 Dckt. 33, p. 2). On November 30, 2015, the Debtor paid the remaining filing fee balance of $4.08. Apart from the filing fee, the Debtor made no payments during the brief pendency of the case.

B. The Second Case (2015)

The Debtor, represented by John E. Pytte, filed her second case, No. 15-40543-EJC, on April 14, 2015. (2015 Dckt. 1). She disclosed combined monthly income of $2,075.28 in her Schedule I and monthly expenses of $1,763.00 in her Schedule J, for monthly net income of $312.28. (2015 Dckt. 1, pp. 19-22). Consistent

4

with this figure, she proposed to make plan payments of $312.00 for a minimum of 36 months. (2015 Dckt. 2, p. 1, ⁋ 1).

In her Schedule D, the Debtor listed two secured claims: one by Loan South Finance of Douglas in the amount of $67.00 and one by TitleMax in the amount of $5,000.00 secured by a 2004 Chevrolet Suburban. (2015 Dckt. 1, p. 13). The only claim of any kind filed on the claims register was that of Loan South Finance of Douglas; the proof of claim states that the $67.00 claim was secured by personal property and household goods. (2015 Claim No. 1-1, p. 1). The Debtor's Schedules E and F reflect unsecured claims totaling $7,227.00. (2015 Dckt. 1, pp. 15-16).

On May 19, 2015, the Debtor paid the $310.00 filing fee in full. Following the Trustee's Motion on Plan Confirmation, which specified that the plan term would be 38 months (2015 dckt. 31), the Court confirmed the Debtor's plan on August 14, 2015. (2015 Dckt. 32). But on October 20, 2015, the Chapter 13 Trustee moved to dismiss the case based on a $936.00 delinquency. (2015 Dckt. 33). The Debtor did not respond to the motion to dismiss, and the Court dismissed the case on November 24, 2015. (2015 Dckt. 35). According to the Chapter 13 Trustee's Final Report and Account, the Debtor paid $936.00 into the case. (2015 Dckt. 37, p. 2).

C. The Third Case (2017)

Over twenty months after the dismissal of her second case, the Debtor, again represented by Mr. Pytte, filed her third case, No. 17-41200-EJC, on August 14,

5

2017. (2017 Dckt. 1). In her Schedule I, she disclosed combined monthly income of $2,173.87, and in her Schedule J she disclosed monthly expenses of $1,929.00, for net monthly income of $244.87. (2017 Dckt. 1, pp. 25-28). She proposed to make plan payments of $244.00 per month for 60 months. (2017 Dckt. 2, p. 1, ¶ 1).

In her Schedule D, the Debtor listed a secured claim of Farmers Furniture in the amount of $1,174.00, indicating that she was a co-signer on the loan, and a secured claim of TitleMax in the amount of $5,173.97 secured by a 2004 Chevy Suburban. (2017 Dckt. 1, p. 17). In Her Schedule E/F, the Debtor disclosed a total of $9,423.00 in unsecured claims. (2017 Dckt. 1, pp. 19-22). The claims register reflects a single secured claim, that of TitleMax in the amount of $4,859.53 (2017 Claim No. 5-1) and unsecured claims totaling $2,102.28.

On December 1, 2017, the Debtor paid in full the $310.00 filing fee. The Court confirmed her plan on December 7, 2017. (2017 Dckt. 22). About nineteen months later, the Chapter 13 Trustee filed a motion to dismiss based on a $577.83 delinquency. (2017 dckt. 47). The motion to dismiss was resolved by a consent order requiring the Debtor's strict compliance in making payments of $244.00 per month beginning in September of 2019. (2017 Dckt. 52). On December 9, 2019, the Trustee filed a notice of noncompliance with the provisions of the consent order (2017 dckt. 54), and the Court dismissed the case on January 13, 2020. (2017 Dckt. 64). The

6

Trustee's Final Report and Account reflects payments by the Debtor of $5,071.72. (2017 Dckt. 67, p. 2).

### D. The Fourth Case (2020)

After the dismissal of her third case, the Debtor waited only two days before filing her fourth case, No. 20-40068-EJC, on January 15, 2020, again with Mr. Pytte as her bankruptcy counsel. (2020 Dckt. 1). She disclosed combined monthly income of $2,083.76 in her Schedule I and monthly expenses of $1,759.00 in her Schedule J, for monthly net income of $324.76. (2020 Dckt. 1, pp. 27-30). In her plan, she proposed to make payments of $324.00 for a minimum of 36 months. (2020 Dckt. 7, p. 1, ¶ 2). Under the Trustee's Motion to Confirm Plan as Amended, the plan term was specified as approximately 51 months. (2020 Dckt. 26, p. 1).

In her Schedule D, the Debtor disclosed three secured claims: an $11,157.54 claim by Aaron's Automotive secured by a 2010 Ford Edge, a $1,174.00 claim by Farmers Furniture secured by property in the possession of a third party, and a $4,859.00 claim by TitleMax secured by a 2004 Chevy Suburban. (2020 Dckt. 1, pp. 19-20). Her Schedule E/F reflects a total of $9,423.00 in unsecured claims. (2020 Dckt. 1, pp. 21-24). The only secured claim filed in the case was that of Capital Asset Recovery, which acquired the claim of Aaron's Automotive, in the amount of $8,697.51. (2020 Claim No. 2-1). Unsecured claims totaling $3,357.12 appear on the claims register.

7

The Debtor paid the $310.00 filing fee in full on May 27, 2020, and the Court confirmed her plan on June 26, 2020. (2020 Dckt. 27). Just over seven months later, on January 29, 2021, the Chapter 13 Trustee moved for dismissal based on a $1,131.69 delinquency. (2020 Dckt. 37). That motion was resolved by a consent order on April 2, 2021, which required the Debtor to continue making payments of $324.00 per month beginning in March of 2021 and extended the plan term to 52 months. (2020 Dckt. 43). The consent order also contained a strict compliance provision. (2020 Dckt. 43, p. 2). On September 20, 2021, the Trustee filed a notice of noncompliance (2020 dckt. 45), and the case was dismissed on October 8, 2021. (2020 Dckt. 46). The Trustee's Final Report and Account reflects payments by the Debtor in the total amount of $5,128.31. (2020 Dckt. 48, p. 2).

E. The Fifth Case (2021)

Once again, the Debtor quickly filed another case, waiting only ten days before filing her fifth case, No. 21-40679-EJC, on October 18, 2021. (2021 Dckt. 1). She was again represented by Mr. Pytte. Her Schedule I reflects combined monthly income of $4,070.68, and her Schedule J reflects monthly expenses of $3,746.50, for monthly net income of $324.18. (2021 Dckt. 1, pp. 29-32). Her plan provided for monthly payments of $324.00 for a minimum of 36 months. (2021 Dckt. 6, p. 1, ¶ 2). The Trustee's Motion to Confirm Plan as Amended provided that beginning in

April of 2023, payments would increase by $150.00 per month after she completed lease payments to Rent-A-Center. (2021 Dckt. 20, p. 1).

In her Schedule D, the Debtor listed the $8,697.51 secured claim of Capital Asset Recovery secured by the 2010 Ford Edge and the Farmers Furniture claim of $1,174.00. (2021 Dckt. 1, pp. 19-20). Her Schedule E/F reflects unsecured claims totaling $12,780.12. (2021 Dckt. 1, pp. 21-26). As in her fourth case, Capital Asset Recovery filed a proof of claim, in the amount of $7,177.87 and secured by the 2010 Ford Edge. (2021 Claim No. 3-1). No other secured claims were filed, and unsecured proofs of claims totaled $3,780.60.

After the Debtor paid the $313.00 filing fee in full on March 9, 2022, the Court confirmed her plan on March 11, 2022. (2021 Dckt. 26). But on March 25, 2022, as in her second, third, and fourth cases, the Chapter 13 Trustee moved for dismissal, this time based on a delinquency of $1,215.00. (2021 Dckt. 28). Under a May 19, 2022 consent order requiring strict compliance, the Debtor agreed to pay $324.00 by May 26, 2022, and to continue making payments of $324.00 per month beginning in June of 2022, and the plan term was extended to 40 months. (2021 Dckt. 33, p. 1). The Trustee filed a notice of noncompliance on September 21, 2022. (2021 Dckt. 35). On November 8, 2022, the Court dismissed the case. (2021 Dckt. 41). According to the Trustee's Final Report and Account, the Debtor made net payments into the case totaling $1,379.00. (2021 Dckt. 45, p. 2).

9

F. The Sixth and Instant Case (2022)

Again represented by Mr. Pytte, the Debtor filed the instant case, her sixth in this Division since 2013, on November 9, 2022, the day after her fifth case was dismissed. (2022 Dckt. 1). She applied to pay the $313.00 filing fee in installments, with the fee due in full no later than March 9, 2023, and the Court granted that request. (2022 Dckt. 3, 7). Her Schedule I reflects combined monthly income of $3,397.87, and her Schedule J reflects monthly expenses of $3,038.00, for monthly net income of $359.87. (2022 Dckt. 1, pp. 29-32). Her plan, filed on November 28, 2022, provided for monthly payments of $359.00 for a minimum of 36 months. (2022 Dckt. 13, p. 1, ⁋ 2).

In her Schedule D, the Debtor again listed only two secured claims: Capital Asset Recovery's claim of $6,340.57 secured by the 2010 Ford Edge and Farmers Furniture's $1,174.00 claim secured by property in a third party's possession. (2022 Dckt. 1, pp. 19-20). Her Schedule E/F reflects unsecured claims totaling $13,240.98. (2022 Dckt. 1, pp. 21-26). On the claims register, the only secured claim was filed by Capital Asset Recovery in the amount of $6,340.57 and secured by the 2010 Ford Edge. (2022 Claim No. 1-1). Unsecured claims totaling $2,544.11 also appear on the claims register.

It is undisputed that the Debtor attended the § 341 meeting, which was first scheduled for December 12, 2022, and was continued to December 22, 2022. (2022

10

Dckt. 9, 16, 17). The confirmation hearing was set for January 18, 2023. (2022 Dckt. 9, p. 2, ⁋ 9). Before that hearing, however, the Chapter 13 Trustee filed on January 4, 2023, the Motion to Dismiss with Prejudice that is now pending before the Court. (2022 Dckt. 18). In that motion, the Trustee represented that the Debtor failed to make any pre-confirmation payments as required by § 1326(a)(1) and therefore requested dismissal of the case. (2022 Dckt. 18, p. 2, ⁋ 3). Further, the Trustee recited the Debtor's prior cases since 2013 and asserted that her "repeated filing and failure to prosecute bankruptcy cases suggests that the Debtor has intentionally failed to comply with the requirements of the [B]ankruptcy [C]ode and is not prosecuting this case in good faith."[4] (2022 Dckt. 18, p. 2, ⁋ 5). Citing §§ 109(g) and 105(a), the Trustee requested that "the Court dismiss the case with prejudice with a minimum of a 180-day bar for the Debtor to refile bankruptcy." (2022 Dckt. 18, p. 2, ⁋ 7). On January 5, 2023, the Debtor filed a response requesting a hearing. (2022 Dckt. 19).

The Motion to Dismiss with Prejudice came on for hearing on January 18, 2023, the same date as the scheduled confirmation hearing. (2022 Dckt. 20). The

---

[4] The Court's CM/ECF system reflects four additional cases filed by the Debtor: First, case no. 99-42665-LWD was filed on September 24, 1999; was confirmed on February 1, 2000; and was dismissed on December 12, 2000. Second, case no. 01-40014-LWD was filed on January 4, 2021; was confirmed on June 1, 2001; and was dismissed on December 6, 2021. Third, case no. 02-41077-LWD was filed on April 4, 2002; was confirmed on August 27, 2002; and was dismissed on November 13, 2003. Fourth, case no. 15-50878-MJK was filed in the Waycross Division on November 30, 2015; was confirmed on March 11, 2016, and was dismissed on July 28, 2017. The Chapter 13 Trustee makes no argument regarding these cases, and the Court, having reviewed the dockets in such cases, finds no evidence of bad faith or willful failure on the Debtor's part. Importantly, all four cases were confirmed.

hearing was attended by Mr. Pytte on behalf of the Debtor, who did not personally appear, and by the Chapter 13 Trustee's staff attorney, Carri Johnson. Based on the Debtor's failure to make the proposed monthly payments of $359.00 for the months of December, 2022 and January, 2023, Ms. Johnson requested denial of confirmation and dismissal of the case. For his part, Mr. Pytte stated that the case initially looked promising based on the Debtor's work schedule but offered no defense to denial of confirmation and dismissal. No witness testimony was taken. After hearing from the parties, the Court announced that confirmation would be denied and that the case would be dismissed. The Court took under advisement whether and for how long the case would be dismissed with prejudice under § 109(g). Mr. Pytte received permission to brief that issue within 10 days, but no such brief was timely filed, and this matter is now ripe for ruling.

## III. <u>Conclusions of Law</u>

Section 1307(c) of the Bankruptcy Code provides that "on request of a party in interest . . . and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause[.]" 11 U.S.C. § 1307(c). The statute then lists eleven grounds for conversion or dismissal, including "failure to commence making timely payments under section 1326" and "denial of confirmation of a plan under section 1325 of this title and denial of a

12

request made for additional time for filing another plan or a modification of a plan."
11 U.S.C. § 1307(c)(4), (5). Here, it is undisputed that the Debtor failed to make pre-confirmation payments under § 1326(a)(1), which requires a debtor to "commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount . . . proposed by the plan to the trustee." 11 U.S.C. § 1326(a)(1)(A). For that reason, the Court denied confirmation and announced that the case would be dismissed. The only remaining issues are whether this case should be dismissed with prejudice and, if so, for how long the Debtor should be barred from refiling.

A. <u>The Trustee Requests Dismissal with Prejudice under § 109(g)(1)</u>

"Normally, a dismissal of a bankruptcy petition has no long-term consequences for the debtor's ability to refile." *In re Hall*, 304 F.3d 743, 746 (7th Cir. 2002). Section 109(g) of the Bankruptcy Code, however, provides an exception to this general rule. It states as follows:

> (g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
>
> > (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
> >
> > (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a

13

> request for relief from the automatic stay provided
> by section 362 of this title.

11 U.S.C. § 109(g)(1), (2). Originally enacted as § 109(f) in 1984, this provision was redesignated as § 109(g) in 1986. *Collier on Bankruptcy* ¶ 109.LH (Richard Levin & Henry J. Sommer, eds., 16th ed.). Its purpose was to curb "abusive repetitive bankruptcy filings by debtors." *Rivera v. Matos (In re Rivera)*, 494 B.R. 101, 105 (B.A.P. 1st Cir. 2013). *See also In Matter of Gibas*, 543 B.R. 570, 590-91 (Bankr. E.D. Wis. 2016) (noting that the purpose of § 109(g) was to provide "greater authority to control abusive filings"); *Collier* ¶ 109.08 (§ 109(g) "prevents certain tactics on the debtor's part that could be deemed abusive, and was enacted to prevent debtors from using repetitive filings as a method of frustrating creditor[s'] efforts to recover what is owed to them").

Section 109(g) serves this purpose by prohibiting debtors, in certain circumstances, from filing another bankruptcy petition for 180 days. To be clear, the Chapter 13 Trustee does not allege that the Debtor was ineligible to file the instant case under § 109(g). Instead, the Trustee argues that the Court should prospectively declare the Debtor ineligible to file a future case within 180 days after dismissal of the instant case. Bankruptcy courts have interpreted § 109(g) to permit a finding of ineligibility to be made either at the time of dismissal or "in a subsequent case when the bankruptcy court is called [upon] to determine if the earlier dismissal renders the debtor ineligible under [11 U.S.C.] § 109(g) to proceed in the subsequent case." *Dos*

14

*Anjos v. Bank of America, N.A. (In re Dos Anjos)*, 482 B.R. 697, 703 (Bankr. D. Mass. 2012) (quoting *Perez v. Fajardo Fed. Sav. Bank*, 116 F.3d 464, 1997 WL 330410, at *1 (1st Cir. 1997)).

Here, the Chapter 13 Trustee does not identify which subsection of § 109(g) purportedly renders the Debtor ineligible to file a subsequent case for 180 days. The record, however, is clear that the Debtor has not sought to voluntarily dismiss this case following a motion for stay relief.[5] No creditor has sought stay relief in this case, nor has the Debtor moved for voluntary dismissal. Therefore, subsection (g)(2) of § 109 is inapplicable, leaving subsection (g)(1) as the only possible basis for dismissal with prejudice.

B. Section 109(g)(1) Requires the Trustee to Establish Willfulness

"Section 109(g)(1) has two clauses, either of which may be used to invoke the section's 180–day bar." *In re Wen Hua Xu*, 386 B.R. 451, 456 (Bankr. S.D.N.Y. 2008). A debtor is barred from refiling under the first clause for "willful failure . . . to abide by orders of the court" and under the second clause for "willful failure . . . to appear before the court in proper prosecution of the case." § 109(g)(1). Again, the

---

[5] "Section 109(g)(2) renders a person ineligible for bankruptcy relief where five conditions are met: (1) the person is an individual, (2) the person was a debtor in a previous bankruptcy case, (3) a party filed a request for relief from the automatic stay in the previous case, (4) the person (debtor) requested and obtained a voluntary dismissal in the previous case following the party's request for relief under § 362, and (5) voluntary dismissal in the previous case occurred within 180 days of the petition date of the person's present case." *In re Gill*, 584 B.R. 63, 66 (Bankr. W.D. Okla. 2018).

Chapter 13 Trustee does not specify the applicable clause but simply states that "the Debtor has failed to make any plan payments."[6] (2022 Dckt. 18, p. 2, ¶ 3).

Some case law supports the proposition that failure to make payments under a confirmed plan can constitute "willful failure . . . to abide by orders of the court" under the first clause of § 109(g)(1). *See In re Nix*, 217 B.R. 237, 238 (Bankr. W.D. Tenn. 1998). Here, though, the Debtor's plan was never confirmed, and thus there was no confirmation order to violate. Rather, the Debtor failed to make pre-confirmation payments under § 1326(a)(1). At least one court has found that failure to make such payments "does indeed qualify as a failure to abide by an order of the court under § 109(g)(1)." *Id.* But in that case, the court based its decision in part on its standing order reflecting the requirements of § 1326(a)(1). *Id.* This District has no such standing order, general order, or local rule.

The second clause of § 109(g)(1), "willful failure . . . to appear before the court in proper prosecution of the case," is not well-defined in the case law. Some courts have stated that the clause contemplates "a Chapter 13 debtor's willful failure to pay under the plan" or "repeated failure to appear at § 341 meetings." *In re*

---

[6] The Debtor's failure to personally appear at the January 18, 2023 hearing on the Trustee's Motion to Dismiss with Prejudice arguably constitutes failure to prosecute the case. Debtor's counsel, however, did appear at the hearing, and in any event the Trustee did not seek dismissal with prejudice on that basis. A debtor's failure to appear at a dismissal hearing may constitute failure to prosecute for purposes of § 109(g)(1), but only upon a showing of willfulness, which is entirely absent here. *See In re Arena*, 81 B.R. 851, 855 (Bankr. E.D. Pa. 1988) ("[W]e do believe that a *willful* failure to attend the dismissal hearing could constitute a failure to property prosecute the case, pursuant to the second category set forth in § 109(g)(1).").

*Herrera*, 194 B.R. 178, 189 (Bankr. N.D. Ill. 1996). At least one court has suggested that "[f]acts beyond whether a debtor physically appears determine if he or she prosecutes a bankruptcy case in good faith" under § 109(g)(1) and that "[a] review of the case and conduct as a whole provides a better general evaluation as to whether an individual debtor complies with the many duties imposed by the Bankruptcy Code in good faith."[7] *In re Strongs*, 569 B.R. 40, 46 (Bankr. E.D.N.C. 2017). In that case, the debtor "failed to attend multiple Section 341 meetings of creditors, consistently filed motions to continue on the eve of scheduled Section 341 meetings, failed to truthfully and accurately disclose relevant asset transfers on her [statement of financial affairs], and failed to pursue approval of a [C]hapter 13 plan in a timely manner." *Id.* at 47. The court in that case found that the debtor failed to properly prosecute her case for purposes of § 109(g)(1).

Even if a debtor's failure to make § 1326(a)(1) pre-confirmation payments implicates § 109(g)(1), whether for failure to abide by court orders or to appear in the prosecution of the case, that is not the end of the inquiry. The text of § 109(g) requires that such failure be "willful." "Although the term "willful" is not defined in the [Bankruptcy] Code, courts have interpreted it to mean deliberate or intentional,

---

[7] As one court put it, § 109(g)(1) "would not be the meaningful tool intended by Congress if 'appear before the court' meant [debtors] could thumb their noses at their duties so long as they come into court on dates set." *Herrera*, 194 B.R. at 189 (quoting *In re King*, 126 B.R. 777, 781 (Bankr. N.D. Ill. 1991)).

rather than accidental or that which is beyond the debtor's control." *Wen Hua Xu*, 386 B.R. at 455. *See also In re Mullinix*, 597 B.R. 161, 163 (Bankr. N.D. Fla. 2018) ("For purposes of section 109(g)(1), 'willful' means 'deliberate or intentional.'); *Dos Anjos*, 482 B.R. at 703 ("Bankruptcy courts agree that the debtor's conduct must have been deliberate and intentional, as opposed to accidental or negligent."). The party seeking dismissal under § 109(g)(1) has the burden of proving the debtor's willfulness. *Dos Anjos*, 482 B.R. at 703.

C. The Trustee Has Failed to Establish Willfulness under § 109(g)(1)

Here, the Chapter 13 Trustee has presented no direct evidence that the Debtor has willfully failed to abide by court orders or to prosecute this case. Instead, the Trustee argues that the willfulness requirement is satisfied by the Debtor's "repeated filings showing [her] inability to make ongoing payments." (2022 Dckt. 18, p. 2, ¶ 4). Some courts have observed that failure to make plan payments will not, by itself, sustain a finding of willful conduct. *See Mullinix*, 597 B.R. at 164 (citing *In re Huckeba*, No. 05-17339-WHD, 2006 WL 6589886, at *3 (Bankr. N.D. Ga. Sept. 9, 2006) (Drake, J.)); *Walker v. Stanley*, 231 B.R. 343, 348 (N.D. Cal. 1999). *Repeated* conduct, however, can support an inference that the conduct was deliberate. *See Mullinix*, 597 B.R. at 164 (noting that "adverse inferences" may be "drawn from the circumstances that indicate that repeated filings were intended as an abuse of the Bankruptcy Code"); *Dos Anjos*, 482 B.R. at 703 (noting that the First Circuit "infers

18

willfulness from 'a pattern of failure to abide by court orders'"); *Nix*, 217 B.R. at 239 ("Several courts have . . . stated that willfulness can be implied from repeated conduct of the debtor, e.g. failure to pay under each of several serial filings.").

Here, it is true that the Debtor filed six cases in this Division between July of 2013 and November of 2022. And it is likewise true that none of those cases resulted in a discharge under § 1328. The Debtor's first case was dismissed for failure to pay the filing fee, and her second, third, fourth, and fifth cases were dismissed for failure to make plan payments. These facts could support an inference that the Debtor willfully failed to make pre-confirmation payments under § 1326(a)(1) in this case.

But the totality of the circumstances in the Debtor's six cases overcomes any such adverse inference. In all six cases, the Debtor has been represented by experienced bankruptcy counsel. She timely paid the filing fee in her second, third, fourth, and fifth cases, and in the first case the fee was paid in full after dismissal. In all cases, she filed the necessary papers, including schedules and statements of financial affairs, required by § 521 and by this Court's local rules. The Trustee acknowledged that the Debtor attended the § 341 meeting in the instant case and has not alleged that she failed to attend the meeting in any of the prior cases. There is no indication from the Debtor's schedules or the claims registers that the Debtor owned any real property or sought to forestall the collection efforts of any mortgage creditor. Apart from the automobile claims of TitleMax and Capital Asset Recovery,

the claim of Farmers Furniture, and the nominal claim of Loan South Finance of Douglas, all claims in the Debtor's cases were unsecured. No creditor sought stay relief in any of the six cases.

Most importantly, the Court confirmed the Debtor's Chapter 13 plans in her second, third, fourth, and fifth cases. Section 1325 of the Bankruptcy Code sets forth the requirements for plan confirmation. Among other things, confirmation requires that "the plan complies with the provisions of [Chapter 13] and with the other applicable provisions of this title," that "the plan has been proposed in good faith and not by any means forbidden by law," that "the debtor will be able to make all payments under the plan and to comply with the plan," and that "the action of the debtor in filing the petition was in good faith." 11 U.S.C. §§ 1325(a)(1), (3), (6), (7).

By confirming the plans in those cases, the Court necessarily made findings that the plans satisfied those requirements. For a finding of good faith, a debtor must show, under the totality of the circumstances, that she made an "honest effort to repay" her creditors rather than "attempting to thwart" them. *In re Bradley*, 567 B.R. 231, 236-37 (Bankr. D. Me. 2017). *See also Dale Recycling & Used Auto Parts, Inc. v. Wade (In re Wade)*, 598 B.R. 34, 43 (Bankr. N.D. Ga. 2019) (listing the factors used to determine good faith in the Eleventh Circuit). And for a finding of feasibility, the debtor must show that her plan had a "reasonable chance of success." *In re Ewing*, 583 B.R. 252, 259 (Bankr. D. Mont. 2018). *See also In re Olsen*, 604 B.R.

790, 796-97 (W.D. Wis. 2019) (noting that "the plan must have a reasonable likelihood of success as determined by the particular circumstances of the plan and the case"). The Court necessarily found both good faith and feasibility in the Debtor's previous four cases and will not now contradict those findings. Accordingly, notwithstanding any adverse inference from the Debtor's prior dismissals, the Court finds that the Chapter 13 Trustee has failed to carry his burden under § 109(g)(1) of proving that the Debtor willfully failed to abide by orders of the Court or to prosecute the case.[8]

---

[8] By requesting dismissal with prejudice "with a *minimum* of a 180-day bar for the Debtor to refile bankruptcy," the Trustee has arguably invoked § 349(a) of the Bankruptcy Code, which states that "[u]nless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title." 11 U.S.C. § 349(a). Several courts have held that § 109(g) "does not limit the court's power to impair future filings by ordering otherwise under section 349(a)." *In re Class A Props. Five, LLC*, 600 B.R. 27, 34 (Bankr. N.D. Ill. 2019). Section 349(a) is sometimes used in conjunction with § 105(a) to dismiss cases for periods longer than the 180 days provided by § 109(g). *See Wenegieme v. Macco*, 580 B.R. 17, 24 (E.D.N.Y. 2018); *In re Ortiz Jimenez*, No. 18-04070 (ESL), 2019 WL 2369510, at *3 (Bankr. D.P.R. June 3, 2019); *In re Rusher*, 283 B.R. 544, 547-48 (Bankr. W.D. Mo. 2002). Dismissal with prejudice under § 349(a) requires a showing of "cause." *In re Bolling*, 609 B.R. 454, 456 (Bankr. D. Conn. 2019). "Dismissal with prejudice under § 349(a) is not meant to be a remedy for every instance of debtor misconduct." *In re Garcia*, 479 B.R. 488, 496 (Bankr. N.D. Ind. 2012) (quoting *In re Hall*, 258 B.R. 908, 912 (Bankr. N.D. Ind. 2001)). "Instead, its use is more properly limited to situations where a debtor's actions constitute egregious misconduct, directly related to the bankruptcy case, which prejudices creditors or undermines the integrity of the bankruptcy system." *Id.* (quoting *In re Hall*, 258 B.R. at 912). *See also Ortiz Jimenez*, 2019 WL 2369510, at *3 (Dismissal with prejudice under § 349(a) "is extraordinary and requires a showing of exceptional circumstances[.]"). The Court has previously relied on §§ 349(a) and 105(a) to dismiss cases with prejudice for more than 180 days. *See In re Blige*, No. 19-40222-EJC, 2019 WL 3959982, at *4 (Bankr. S.D. Ga. Aug. 21, 2019) (three years prejudice for lying about incarceration); *In re Sherrod*, No. 17-40434-EJC, 2018 WL 3323883, at *5 (Bankr. S.D. Ga. July 5, 2018) (two years prejudice for forging a letter purportedly by the Chapter 13 Trustee authorizing the debtor to incur debt to purchase a vehicle) Here, the Court finds that the Trustee has failed to establish cause for dismissal with prejudice under § 349(a) for the same reasons as under § 109(g).

## IV. Conclusion

The Court recognizes that some serial filings "pervert the proper operation of the bankruptcy process and unfairly benefit unscrupulous debtors with the protections of the automatic stay while creating externalities that are borne solely by their creditors and the judicial system." *In re Stockwell*, 579 B.R. 367, 373-74 (Bankr. E.D.N.C. 2017). On the other hand, "[n]ot all serial filers should be viewed or treated similarly under the law." *In re Hancock*, No. 15-10037-JDL, 2015 WL 1292387, at *5 (Bankr. W.D. Okla. March 19, 2015). Some serial filers make "inadvertent or unintentional mistakes in filing and prosecuting cases," and others "fall on hard times post-petition—losing a job or sustaining injury or illness resulting in the inability to perform under a plan." *Id.*

Moreover, apart from the limited circumstances specified in § 109(g), nothing in the Bankruptcy Code prohibits serial filings.[9] *In re Hieter*, 414 B.R. 665, 671

---

[9] The Code contains several provisions that *penalize* serial filings. For example, if an individual debtor had a prior Chapter 7, 11, or 13 case that was pending within the preceding 1-year period but was dismissed, then the automatic stay in the later case "shall terminate with respect to the debtor on the 30th day after the filing of the later case." 11 U.S.C. § 362(c)(3)(A). If an individual debtor had two or more cases that were pending within the previous year but were dismissed, then the automatic stay "shall not go into effect upon the filing of the later case[.]" 11 U.S.C. § 362(c)(4)(A)(i). A Chapter 7 debtor is not eligible for a discharge if that debtor received a discharge under §§ 727 or 1141 in a case commenced within eight years before the petition date or, subject to certain exceptions, received a discharge under §§ 1228 or 1328 in a case commenced within six years before the petition date. 11 U.S.C. §§ 727(a)(8), (9). And a Chapter 13 debtor is not eligible for a discharge if that debtor received a discharge in a Chapter 7, 11, or 12 case within four years before the petition date or received a discharge in a prior Chapter 13 case within two

(Bankr. D. Idaho 2009) ("[T]here is no express prohibition restricting serial filings outside of the eligibility requirements in § 109(g)."); *In re DeBerry*, No. 97-37885-S, 1998 WL 34342252, at *2 (Bankr. E.D. Va. Apr. 1, 1998) ("[W]ith the exception of § 109(g), nothing in the Bankruptcy Code prohibits serial filings."). "[A] debtor should be allowed to use the tools in the tool box if done . . . with a good-faith purpose." *Free v. Malaier (In re Free)*, 542 B.R. 492, 501 (B.A.P. 9th Cir. 2015) (citing *HSBC Bank USA, N.A. v. Blendheim (In re Blendheim)*, 803 F.3d 477, 500 (9th Cir. 2015)). Given the lack of evidence of willfulness proffered by the Chapter 13 Trustee in this case, the Court is not willing to pronounce this Debtor a bad-faith serial filer. Accordingly, the Court will deny the Trustee's Motion to Dismiss with Prejudice by separate order.

Dated at Savannah, Georgia, this 29th day of March, 2023.

Edward J. Coleman, III, Chief Judge
United States Bankruptcy Court
Southern District of Georgia

---

years before the petition date. 11 U.S.C. § 1328(f). As the Supreme Court pointed out in *Johnson v. Home State Bank*, 501 U.S. 78 (1991), in the context of so-called "Chapter 20" cases, "the evident care with which Congress fashioned these express prohibitions" shows that "Congress did not intend categorically to foreclose" serial filings. *Id.* at 87. "Not only did Congress not put an end to serial filings in BAPCPA, but by enacting such provisions as sections 362(c) and 1328(f)(1), it recognized that they would continue to occur." *In re Francis*, No. 14-42974-RFN-13, 2015 WL 139520, at *6 (Bankr. N.D. Tex. Jan. 8, 2015).